Kenneth Triano, Counsel for Appellant Guillermo Pintado-Isiordia. Good morning. May it please the Court. In our appeal, we've raised three issues, three general issues that I would like to address, two of them primarily in the time that I've been allotted, and that first issue would be the Mexican birth certificate as it's been characterized in our appeal, and particularly our claim that it violates the confrontation clause of the Constitution under Crawford v. Washington. The other issue I would like to cover relates to sentencing and the Apprendi issue. I believe that the record specifically in this case was testimonial in nature because it was a record that was done at the request of the government on the eve of trial. That summarized the search of other records that we don't have before the court in a foreign country that those records that were searched were done, created more than 50 years ago, and there's no ability to examine the source of those records based on the record that's before the court, nor the circumstances under which those records were generated. Just so I'm clear on your argument, you're making a constitutional argument under Crawford. You're not claiming that it wouldn't, leaving aside the confrontation problem, you're not saying that it wouldn't be admissible under just the basic rules of evidence. Is that right? Well, I do believe that it's inadmissible under the hearsay rule and not properly authenticated. Let's assume for the sake of discussion, I know you have a different view of it, but let's just assume that it was properly authenticated, that they had all the whistles and bells and the ribbons and all the other stuff, the apostille and so on. Why does it not come in as an exception to the hearsay rule for a public record or a vital record under the exception to the hearsay rule? Well, for a vital record, there needs to be a duty imposed by law to create the record. Doesn't it say on there that it was done pursuant to civil law or whatever it was? It does say something like that, except we don't know what that means, whether that's how they ---- It does say a little bit illegible. I mean, my document has various parts of it that say illegible. In fact, the citizenship of the defendant's mother is down as illegible as well, which calls into question the trustworthiness of the document itself. As far as the public record is concerned, I don't think it can come in against a criminal defendant because there's insufficient foundation that it was a matter observed pursuant to a duty imposed by law under 803.8 subsection B or under C as a factual findings resulting from an investigation done by somebody in Mexico because it can't come in against a criminal defendant under that section either. So therefore, it would have to come in as a foreign under the Foreign Records Act, but the Foreign Records Act doesn't apply to such a record because it's not a business record, first of all. And secondly, to qualify as a hearsay exception, the authentication under the Foreign Records Act has to be very specifically met. The way Judge Moskowitz in the district court authenticated the document or found it to be authenticated was under the civil law as a substitution for Federal Rule of Evidence 9023, which would mean that that authentication is meant to go with a public record's hearsay exception. Because that Foreign Records Act provides both hearsay and authentication, but it has to meet a specific foundation, which clearly was not met in this case. And as far as the prejudice to the defendant, I think that it effectively, by bringing this in the government's case, it shifted the burden of proving allegiance to the defense. Mrs. Pintada was clearly the most critical witness to the defense. She's the only one with actual knowledge during the course of this trial who knew where Mr. Pintada was born, except now when she took the stand on the defense case, it was as if she was responding to the government finding this record and introducing it into the case, and she was coming up with a story to match the record, which had that record not come in, she would have told the story that she told in her testimony of how he came to be born in the United States and then went back to Mexico. But just so I'm clear of the facts, again, the mother testified that the defendant was born in Mexico. No, he was born in the United States. The mother said he was born in the United States? Yes. What story did you say he did not, that wouldn't have come in? It wouldn't have come in as a response to the government showing that he was born in Mexico through this exhibit that's at issue and that I'm arguing now. This document also doesn't show that he was born on the date, doesn't show that the certificate was created on the date of his birth. I'm sorry, I'm not understanding you. What's your quarrel with the mother's testimony? My quarrel is not with the mother's testimony. It's the fact that when we got to put on our defense case that the government had already had introduced this document and that this document put Mrs. Pintado in a posture of appearing to be responding to the government's argument that the defendant was born in Mexico. And there's no way to examine the people who created the initial record way back in 1951. The thing that came in in court was done in 2004, a month or so before the trial. Did you make the Crawford argument below? Yes, we did. But it was not extensively briefed, but it was briefed in our pre-trial motion. Excuse me, our motions in limine, and that's in our excerpts of record. And it was also argued in the district court, and Judge Moskowitz did rule on it in the district court. Now, what is your argument that it's testimonial? It's testimonial because it's a summary done 53 years after the fact of a search of some records that we don't know what those records exactly were by a person in a foreign country who did it at the request of the government, and they did it on the eve of trial. From the record in the- Well, because the dates of it are the date just before the trial was originally supposed to start in December. I also know from things that aren't in the record by faxes that were sent to me and other things I received that aren't part of the record. But the date of the document itself was just three months before the actual trial took place. But I also establish in my appeal that the trial was originally scheduled for the same month that this document was produced. So if you're right in any summary of business records prepared and offered into evidence, what even if admissible under the hearsay rule would be inadmissible under the Confrontation Clause? No, because there are guarantees of trustworthiness in records that we know from our own country, birth records. We understand how birth records are kept in the United States or certain government records are kept. But your argument is not trustworthy or untrustworthy. Your argument is it's testimonial. Well, I believe that this particular record is testimonial. It has to be given almost that presumption that it's testimonial because it says so much about something that happened so long ago without saying at all how the record was produced or what investigation was done. Even the most simplest of records introduced in federal or state court always comes with some custodian's letter sworn under oath that sets forth a more thorough foundation of what records were searched and why they were searched and how the records are kept. And in this case, there is no such affidavit. The affidavit is really just attesting to the fact that it's been signed a couple of times by different individuals. Did you want to reserve your remaining few seconds? Sure. Okay, thank you. Thank you. Good morning. Good morning. Carl Sandoval of the United States. Your Honors, unless you have specific questions, I will just address first some of the points brought out by Mr. Troiano. Can you talk a little bit louder, please? Certainly, Your Honor. First, with respect to the issue of hearsay and 8038, the record shows at pages 90 through 100, there was a lengthy exchange regarding the hearsay issue at trial. Judge Moskowitz found that, in fact, this document, the certificate of birth, did reflect the activities or the duties of the office or agency. This is a document that on its face specifically says, and this is Governance Exhibit 12A, the translation of the birth certificate, that the certificate is issued pursuant to the provisions in the state civil code in force. This is a person who is, in essence, a director of the registry in Nayarit. This is a document that, in addition, bears all the indicia of reliability that we would want. It is the same name. The parents' names match up with the evidence at trial from the defendant himself. It is the same date of birth. And if we can step back and look at the context. Why didn't you get the actual birth certificate? Your Honor, I believe that we – Registration at birth. My recollection is that we had an actual handwritten, two-page document that we were unable to obtain an adequate certification for prior to trial, and so that never came into evidence. This is a document that, in the government's estimation, is not one that presents a Crawford issue. I think that Mr. Triana's argument simply goes too far, that any kind of summary, if it's presented or prepared any time near trial, is necessarily a testimonial document. This is a document that is far and away from, for example, an issue of prior testimony or an issue where there is an interrogation by a police officer, something like that that might present more of a testimonial context. This is, if we step back and look at the context, it is essentially an objective cataloging of unambiguous, factual information that's been around for 50 years. And, again, there's really no dispute, number one, that this is, in fact, accurate information regarding the defendant's date of birth, where he was registered. The mother's story at the time of trial was, he was born in the United States, but we registered him in Mexico. At my husband's behest, we did this in Mexico. So there's no real dispute about that. In terms of this prejudice issue, or what the court may look at as potential harmless error, this document really is simply something that the defendant's mother himself said, which is, yeah, we went and we registered it in Mexico. So there's no real dispute about either the information in this document, the fact that it's reliable, or that there's really no error when the mother herself is saying this exact information. With respect to the sense or the suggestion Mr. Troiano has that perhaps she was forced to take the stand to tell this story in response, I guess I would say I don't think that's correct. All along the mother was going to testify. She had testified at his earlier 1326 trial. This case had, in fact, as the docket shows, been continued several times solely for the purpose of enabling the mother to come and tell her story regarding the defendant's birth, supposed birth in Nogales, Arizona, and all the facts that came out. So there's no real big surprise here. It's not as if she was somehow forced to testify. And certainly the government is entitled to its own force of proof. It's admissible evidence. You're entitled. You have the burden of proof. Absolutely, Your Honor. And the issue. And we're also entitled to meet that burden with appropriate admissible evidence. And that's what happened here. I won't belabor the point in terms of recitations or citations to the record, but there were a number of exchanges with respect to the issue of 9023, and that is the self-authenticating foreign record. You know, Judge Wardlaw made the point that the translation on Exhibit 12A says in several places that it's illegible. Your Honor, that's true. And what's puzzling to me is I looked at the original in Spanish, and it looks perfectly legible. I don't understand that. Your Honor, I think what you may be referring to, and I noticed that when I went through the record again, is that below Mr. Rodriguez's signature, in Spanish, it appears to say Director Estatal del Registro. My Spanish is poor. But the civil registry. I cannot explain to you. Which page are you looking at? Which excerpt? This is Government's Exhibits 12. I'll have to get the record page for you. Is it 24 or 160? Yes, Your Honor. It is page 24. And page 25 is the English translation of that. And you'll see that the translation does, in fact, refer to the gentleman's signature. And then below that says illegible. I cannot explain, Your Honor, because it does seem quite legible. And the same thing where it says, this certificate is issued pursuant to the provisions in Section 35 of the State Civil Code in force at, and then it says illegible. Then I turn to the original Spanish version, and it goes on to be, you know, it's in the city of Tepec, Nayib, on the 9th of December, 2004. I mean, it looks perfectly legible. I agree, Your Honor. And I think, obviously, what's in the record is what's in the record. I can't, unfortunately, explain to you as to why the translator found that to be illegible. I think the court can certainly look at it and see that it is legible. I think, even leaving that aside, the document as translated shows that, in fact, again, this is a document that was issued pursuant to provisions of the specific code. There is, and let's keep in mind as well, that in terms of further guarantees of trustworthiness, this is not simply this document by itself. I have the original in front of me, and in the record there is the Mexican apostille. So, in essence, we have several layers of trustworthiness, if you will. And that's, that is certainly one significant consideration Judge Moskowitz had when he said that this is a self-authenticating foreign record. I don't think that he specifically addressed the apostille. There was much discussion about it. But what really drove his analysis, I think, was that this is a document that they'd had for at least a month, if not more. It bore an apostille that was consistent with the Hague Convention and had all the indicia of reliability. There was, again, never any dispute that there was anything wrong with the information here or that he was, in fact, registered there. In essence, both sides were saying that. The government's position, of course, was, well, he was registered there because that's where he was born. So I think that the, I realize I'm jumping around a little bit in terms of the issues, but certainly in terms of the hearsay rule, the prongs of 8038 are met, 9023, for the reasons discussed in the government's brief, are met. I would just say, again, with respect to the Crawford issue, I want to focus on that a little bit. Again, this is a situation where it is a cataloging of unambiguous factual matter. And, again, the fact that it is created, even if we accept that it is created during the course of the litigation, that is not really the dispositive element here. So, for example, by analogy, you might look to a certificate of nonexistence of record, which is not a testimonial document, notwithstanding the fact that it's oftentimes prepared during the course of the litigation. This is, in essence, a ministerial recording of information from 50 years ago that's not in dispute. And so, given the entire context, again, this is really not something that, and the spectrum is something that I think can fairly be considered testimonial. And, finally, the government's position is there was no error on any of the grounds raised by defense counsel, but certainly to the extent there was any error, it was harmless. This is a document, again, essentially saying he was registered in Mexico. Well, the evidence is that the mother came and said, yes, he was registered in Mexico. She offered an explanation. But, nonetheless, there's no real dispute about that. And in the broader scheme, just leaving aside the document, there's other evidence in the record certainly that would support the conviction, including perhaps most telling the fact that he was found literally in the middle of the morning, out in some remote area, where he says, I've been deported before. So, again, taking the entire record in context, even if the court finds that there's error, it is harmless in the totality of the record. Thank you. Thank you. Mr. Toriano, you have about a minute left. Thank you. With respect to having the document ahead of time, we did, in fact, receive the document in advance of trial, but it wasn't until the Friday on the eve of trial, the actual one the trial was taking place the following Monday, that we were given the apostille and all those supporting documents in Spanish and their translated, the government's translated version. And that is in the record, and we did raise that during the course of the trial. As far as what's legible and what's not legible, the jury's not supposed to translate from Spanish into English. What they received that they were supposed to read was the English version of the document and whatever testimony was offered during the trial. And as far as the document being testimonial, I think it would have been helpful in this case if somebody who knew how these records were created originally, not just this thing 50 some odd years later, could explain whether a child who was born in the United States could lawfully be registered in Mexico five days later, because that's what the document says, that he was registered there on 12-29, and there's no dispute in this case that he was born on 12-24 of 1951. And I think that having such testimony or being able to examine such a person during the course of the trial, we would have been able to corroborate Mrs. Pintado's testimony, instead of her being made to look like someone who created a story to contradict the government's case in chief. And, in fact, she was sort of made fun of during the trial by government counsel on cross-examination when this issue was addressed. Thank you very much, Mr. Toriano, and you too, Mr. Sandoval.  Good morning.
judges: Lay, Silverman, Wardlaw